## MADDEN v. APPLETON ELECTRIC CO.
### No. 7294.

Circuit Court of Appeals, Seventh Circuit.

Nov. 12, 1940.

Wm. F. Freudenreich, Richard Russell Wolfe, and C. Paul Parker, all of Chicago, Ill., for appellant.

John A. Marzall, of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

This is an appeal by the defendant (the Appleton Electric Company) from a judgment for the plaintiff in a suit for infringement of the Knell patent, No. 2,000,851,

issued May 7, 1935 and covering an outlet box. The District Court held claims 1, 3, 5 and 6 of the Knell patent valid and infringed. Accordingly the Court rendered judgment for the plaintiff and the defendant appealed therefrom.

Outlet boxes are used in the electrical wiring of buildings to receive and hold armored cables whose wires or conductors are connected to lighting fixtures in the wall or ceiling of the rooms wired. In general plaintiff's structure comprises a metal box with an outside clamping mechanism for fastening the electric cable to the box. The outlet box and the external cable supporting housing (a clamp operating therein) are provided with knock-outs (round pieces of metal only partially punched out of the walls part of which they form). When these knock-outs are removed the openings will permit the wires or conductors in the cables to pass through the housing and into the interior of the box.

In his specification the patentee stated that the "primary object of the present invention is to provide a new and improved outlet box which is provided with a rigidly mounted cable receiving member, or housing, which has a movable member for clampingly fastening a conduit or cable * * * and which is provided with novel knock-outs. * * *" He further stated that the "invention provides a box having a novel cable supporting housing, and knock-outs in the box and housing. * * * In applicant's co-pending application, Serial No. 429,493 * * * only the particular type of knock-out construction is claimed therein. The features of the outlet box and the auxiliary housing and the particular clamping means are claimed in this application. Changes may be made in the form, construction, and arrangement of the parts without departing from the spirit of the invention. * * *"

Knell claimed (1) an outlet box, (2) an "open side" or "open bottom" housing which is "fixed," "rigidly fixed," "arranged adjacent" or "operatively connected" to the outside of the box, (3) a movable clamp which operates inside the housing and locks cables in position and (4) knockouts in the

exterior surface of the housing which are alined with openings in the exterior wall of the box and permits the entrance of the cables. The four claims in issue[1] are directed to the combination of elements above described. No particular shape or form is specified therein for the knockouts, clamp, box and housing except that the housing must have an open side or bottom.

Knell applied for his patent on March 14, 1931, and it was issued to him on May 7, 1935. In the Patent Office he started with 11 claims, added 14 more by way of amendment and change, and ended with 6 of the 25 allowed. The Patent Office cited many prior art patents among which were the Calderwood patent, No. 1,772,241, issued August 5, 1930, and the Milcoff patent, No. 1,785,524, issued December 16, 1930. The Calderwood construction disclosed (1) an outlet box, (2) an angularly shaped clamp support member (designated by number 13 on the drawings) which comprises two sides arranged inside of the box with its two edges fixed to the side wall and floor of the box, (3) a movable clamp which operates inside the clamp support member and locks cables in position, and (4) knockout openings in the floor and side walls of the box which are alined with openings in the sides of the clamp support member and permits the entrance of the cables. The Milcoff construction disclosed the same general elements as above except that the clamp support member is designated number 12 on the drawings and the knockouts (located only in the side wall of the box) are opposite "bushed openings" in one side of the clamp support member and directly below bushed openings in the other side of the angularly shaped member.

Original claims 1 and 3 described a combination comprising an outlet box, a housing rigidly fixed to the box and a clamp operating inside the housing. Original claim 4 discussed the position of the knockouts in the combination described in 1 and 3. These claims were rejected by the examiner. Claims 1 and 3 were rejected as reading directly on Calderwood or Milcoff. The examiner stated that the "elements 13 of Calderwood or 12 of Milcoff are con-

[1] Counsel for defendant states that claim 1 is typical of the four claims in question. For claim 1 see footnote 2. Counsel for plaintiff states that claim 3 is typical. For claim 3 see footnote 3. Claims 5 and 6 include the same general elements of the combination but add nothing to the conception disclosed in claims 1 and 3 of the patent. In describing the housing and the outlet box, claims 5 and 6 employ the words "arranged adjacent" and "operatively connected" in lieu of the words "fixed," "rigidly fixed" and "fastened."

sidered the full equivalents of applicant's housing." He rejected claim 4 for vagueness since it provided the housing with knockouts but failed to locate the housing as inside or outside the outlet box. These rejections constituted the last action of this particular examiner on the claims of the patent, the inspection thereafter being made by another examiner.

After rejection for vagueness the original claim 4 was amended to define the exact location of the housing. This amended claim was rejected and another amendment to provide for alined knockouts was made. As thus amended the original claim 4 read as shown in the marginal note.[2] The examiner rejected this claim on two grounds, namely, (1) that the claim was "drawn to an aggregation of the knockouts and the cable clamping means" and (2) that the claim was "unpatentable over Milcoff or Calderwood in view of Bissell [Number 1,265,875, issued May 14, 1918], it being considered unpatentable to place the cable clamping structures of either of the former two references on the outside rather than on the inside of the box following the teaching of Bissell in respect to such location." After this rejection the claim was erased entirely by the applicant, and new claim 21 was added which as is shown in footnote 2 added little to the language of the former. But this time the examiner allowed the new claim 21 (formerly original claim 4) as claim 1 of the patent.

After original claims 1 and 3 were rejected for reading on Calderwood or Milcoff, they were erased entirely by the applicant, and new claim 18 was added, which in turn was rejected for the same reason. New claim 18 was amended, and as thus amended read as shown in the marginal note.[3] The examiner then rejected the claim for the two grounds advanced in the rejection of original claim 4, namely, (1) that of aggregation and (2) that of reading on Milcoff or Calderwood in view of Bissell. After this rejection the claim was erased entirely and new claim 23 was added which as is shown in footnote 3 added little to the language of the former. But this time the examiner allowed the new claim 23 as claim 3 of the patent.

In presenting to the examiner new claim 21 (formerly original claim 4) and new claim 23 (formerly new claim 18) the applicant urged allowance with the following argument: " * * * The advantages of a structure such as herein claimed is that it provides many novel features over the internal clamping mechanisms disclosed in the prior art. By attaching the housing to the outside of the box instead of to the inside of the box, no interference exists with the other usual knock-outs in the box. See for instance * * * Milcoff, in

---

[2] "An outlet box comprising a body, a housing located outside of said box and rigidly fixed to an outer wall of said body, (said housing) [said housing when fastened to said wall] having an open side, a clamp movably arranged in said housing and closing (said side) [the said open side], screw means engageable with said clamp and a wall of said housing for clamping a cable in position relative to said box, (and alined knock-outs in a wall of said housing and a wall of said box to receive a cable) [said outer wall of said box having openings formed therein, and knock-outs in a wall of said housing and in alinement with the openings in said outer wall to receive a cable]."

The language quoted above, omitting the words in brackets, is original claim 4 as finally amended. After its rejection it was erased entirely by the applicant and new claim 21 was added. The language quoted above, omitting the words in the parentheses, is new claim 21 which was allowed by the examiner as claim 1 of the patent.

[3] "In a device of the class decribed comprising a receptacle having (knock-outs) [openings] for the reception of a conduit or cable, an open bottom housing fixed to (said receptacle) [an outer wall of said receptacle] and having (cable) knock-outs arranged in an exterior wall thereof in alinement with (the first named knock-outs) [said openings in the receptacle], a vertically slidable member arranged (at) [in] the bottom of said housing between the outer wall of housing and an outer wall of the receptacle, (and) threaded means passing through the top of said housing and engaging said slidable member whereby said slidable member may be moved to clamp a cable or conduit between said member and the outer wall of the housing when a cable is arranged (in said housing opening) [through a knock-out in said housing]."

The language quoted above, omitting the words in brackets, is new claim 18 as finally amended. After its rejection it was erased entirely by the applicant and new claim 23 was added. The language quoted above, omitting the words in the parentheses, is new claim 23 which was allowed by the examiner as claim 3 of the patent.

which he shows his interior clamp extending over one of the knock-outs * * *. Also notice the Calderwood structure showing all the mechanism making up practically 30% of the cubical area of the box. * * * Their structures interfere with the knock-outs when the housing is placed inside the box. Another feature for providing a housing exteriorly of the box is that the exposed insulation on the wires is not interfered with as they would be, for instance, in Calderwood. * * * The Examiner is then referred to * * * applicant's device showing the BX cable engaging the sharp corners where the knock-outs are removed. This construction can not possibly damage the insulated wires. Then notice the rounded smooth openings in the wall of the box. * * * Also Milcoff and Calderwood do not show any knock-outs in their housing. * * * Applicant [also] provides a closed housing to prevent sparks or arcs which may occur inside the box from finding their way outside of the box. * * *"

At the trial counsel for the plaintiff observed that "means arranged outside the box for locking the cable" was not new in the art. For instance a prior art patent to Gauthier, No. 1,129,973, issued on March 2, 1915, showed a cable clamping mechanism rigidly mounted outside the box. Gauthier called his clamp structure a "bushing" and claimed a combination comprising (1) an outlet box, (2) a detachable bushing and (3) knockouts in the box. He stated in his specification that his patent "relates to a thimble or bushing which is designed to be clamped on the end of a * * * cable containing electrical conducting wires, for the purpose of facilitating the entry of the wires into, and the attachment of the conduit or cable to the outlet box * * *." He further stated that the "use of this bushing obviates the necessity of fishing for the ends of the wires and threading them through the box. It provides smooth corners which will not cut the insulation on the wires and insures a firm connection between the end of the cable and the box:" In this connection, plaintiff's expert witness observed that the Gauthier combination was "somewhat along the lines of" boxes then "conventional on the market," boxes which disclosed an external detachable cable locking clamp mechanism.

Plaintiff's expert witness testified that the patented box possessed two advantages over the prior art, namely, (1) the saving of space, and (2) the elimination of "installation." As to (1) he pointed out that "by clamping the cables on the outside of the outlet box valuable space [20 percent] on the interior of the box is conserved for the placement of wires and the spliced wire ends within the box." As to (2) he observed that there is an advantage "in providing a clamp structure permanently fastened on the box * * * in that the entire item becomes a unit, stocked by the merchant and handled by the operator, the electrician" for he noticed that where a box included a "detachable member for locking" cables "it is necessary for the electrician to first attach the bushing on the box, usually by assembling a clamping nut on the inside of the box" before the cables can be applied.

This expert witness also stated that with the patented box which provides a "clamp structure permanently fastened on the box," the "electrician applies the cable with minimum effort, simply tightening the clamp screw." On the other hand he related that with a box providing an internal clamping arrangement, "it is necessary to actually insert the end of the armored cable within the confines of the octagonal box and then tighten the clamp to hold it in place." This witness concluded by stating that the "essence of the invention disclosed in the Knell patent, 2,000,851, is the arrangement of a clamping device on the outside, permanently, rigidly fixed on the outside of an outlet box for the purpose of facilitating the clamping of cables on the box without requiring the workman to perform manipulations inside of the box * * *. The further purpose of the Knell patent is to form the clamp and housing, which form the external clamping device, in such a way that they cooperate to substantially block or cover the permanent openings for the cable conductors in the sidewall of the box."

Plaintiff's witness testified that since 1930 the All-Steel-Equip Company, licensee and manufacturer of the patented box, has expended some $5,000 in advertising the box and that since that time over 787,000 items were sold for a gross sales value of around $110,000. A typical advertisement relating to the patented box, reads as follows: "There may be wiremen who don't mind fussing with inside clamps. * * * But the big majority, who consider their time valuable [do]. * * * For these men All-Steel-Equip Company has designed this

new Outlet Box with two Jay-Kay outside clamps. Each clamp accommodates two leads of cable—eliminating entirely the time and cost of installing connectors. Wiring and splicing is easier and faster because of the additional room provided inside the box, by having the clamps outside." The advertisements in evidence indicated that the advertised boxes varied in size, form and construction and that some had clamping mechanisms located inside the box, for instance, a box catalogued as 255-BX. The plaintiff's witness stated that the company has continued to advertise and sell boxes with internal clamp mechanisms and that it has been making and selling boxes like 255-BX for fifteen years. He also stated that the decrease in sales of the patented box over the last two years was due to competition by defendant's device.

At the end of the trial the District Judge who heard the case, filed a memorandum opinion which discussed the question of infringement only. He concluded that defendant's device infringed the patent in suit (provided the patent is valid) and in this regard we agree with the court. The defendant's device combines every element of the claims of the patent. It utilizes the same housing which is constructed in the same way and is attached to the box in the same way, and it employs a clamp in the housing which operates in the same way. The only difference between the two devices, is that the plaintiff has an open bottom housing whereas the defendant uses a partially open bottom housing. The addition by defendant of a non-essential flange to cover partially the bottom of the housing, does not avoid the scope of the claims in question. After the memorandum opinion above described, the plaintiff submitted findings of fact and conclusions of law which found and held the patent in issue valid and infringed, and these were approved by a District Judge who had not heard the case.

In the Patent Office language substantially similar to that constituting claims 1 and 3 of the patent (see in particular footnotes 2 and 3), was rejected repeatedly by the examiner. Between the last of these rejections and the ultimate action of allowance, intervened an argument by the applicant that described the many advantages accruing from "attaching the housing to the outside of the box instead of to the inside of the box." At the trial plaintiff's expert witness concluded that the "essence" of the Knell patent was "the arrangement of a clamping device * * * rigidly fixed on the outside of an outlet box." In the briefs counsel for plaintiff stated that "A fixed housing on' the outside of an outlet box with a clamp operating therein is new." If Knell has added to the prior art, that addition is confined to his fixing on the outside of an outlet box a "housing" or "cable receiving member" with a movable clamp operating therein. In doing this has Knell discovered something unknown to, or not suggested by, the prior art patents? We think the answer is found in Milcoff, Calderwood and Gauthier.

We observe that a housing or cable receiving member with a movable clamp operating therein (the cable clamping mechanism), is old in the art. In this respect Milcoff and Calderwood show a separate box structure comprising two sides with the two edges thereof fixed to the side wall and floor of the outlet box, and a screw inside threaded to draw a clamp shoe against the cable. Since Knell does not claim any particular form of clamp shoe or housing, it is easy to hold that Knell has not added to the prior art in this particular. Perhaps Knell has improved the cable clamping mechanism but certainly it performs the same function (that of fastening a cable to the box) in the combination. In the Patent Office the examiner early came to the same conclusion and the applicant thereafter did not question this nor claim novelty therefor. We conclude that the cable clamping mechanisms shown in the Milcoff and Calderwood patents, are the full equivalents of the Knell housing with movable clamp operating therein.

Nor does counsel really distinguish the prior art by pointing to Gauthier's failure to provide a fixed union of the clamping mechanism and the outlet box. Gauthier contemplated a separate cable receiving member, a separate outlet box and a subsequent assembly of the two elements by an electrician. On the other hand Knell contemplated and claimed a fixed union of the two elements, so that the "entire item becomes a unit, stocked by the merchant and handled by the operator, the electrician" thereby eliminating the subsequent assembly or installation. This point might distinguish Gauthier but it overlooks the Milcoff and Calderwood patents which also contemplate and claim a fixed union of the two elements. Nor can counsel overlook Milcoff and Calderwood on the nature of

the union of the two elements, by emphasizing the location of the clamping mechanism. On this point as to the nature of the union between two boxes, it matters little that one of them is inside or outside of the other.

In this connection plaintiff's expert witness added the word permanently when he concluded that "the essence of the invention disclosed in the Knell patent * * * is the arrangement of a clamping device on the outside, permanently, rigidly fixed on the outside of an outlet box," and he used the same word again when he described the advantage of installation inherent in "a clamp structure permanently fastened on the box." Knell does not refer to the word *permanently* in his claims. He claims a clamp mechanism which is "fixed," "rigidly fixed," "operatively connected" or "arranged adjacent" to the outside of an outlet box. In his specification he provides the sides of the housing with lugs which extend through openings in the outlet box and are clinched on the inside thereof. In this respect Knell does not add on Milcoff and Calderwood who also claim a fixed union between the two elements. For instance in his specification Calderwood directs the securing of the cable receiving member to the wall of the outlet box "by any suitable means, as by ears * * * projected through openings in the box wall and bent over, or riveted." In any event both the Milcoff and Calderwood prior art patents show permanently mounted clamping devices similar to Knell.

Furthermore the general idea of locating the cable clamping mechanism on the outside of the outlet box, is admittedly old in the art. In this regard the Gauthier prior art patent is applicable and it shows this outside location of the clamping structure. Perhaps Gauthier does not show a movable clamp shoe as does Knell, Milcoff or Calderwood but he does show the outside location of the clamp mechanism and this mechanism performs the same function in the combination as the clamping mechanism in Knell, Milcoff or Calderwood, that is, it fastens a cable to the box. Hereafter we shall also refer to the outlet box as "Box A" and the cable clamping mechanism as "Box B."

In the Patent Office it was argued that "Applicant provides a closed housing to prevent sparks or arcs which may occur inside the box from finding their way outside the box." At the trial plaintiff's expert witness stated that the "further purpose of the Knell patent is to form the clamp and housing * * * in such a way that they cooperate to substantially block or cover the permanent openings for the cable conductors in the sidewall of the box." In his briefs counsel for plaintiff stated that one of the purposes of the patent in suit was to prevent "sparks or arcs inside of the box from getting outside of the box." To define the prevention of the escape of sparks or arcs as a purpose of the patent, is not to add much to the prior art. Nor is it even suggestive of patentable invention, to describe the means by which this purpose is accomplished.

To prevent flashes or sparks inside a box from passing out through holes, it is only necessary to close the holes. In Milcoff knockouts in Box A close these holes temorarily until the time when they are removed and the holes are blocked by the cable conductors themselves. In Knell Box B and knockouts therein close the holes temporarily until the time when the knockouts are removed and the holes are blocked by the cable conductors. Knell could have used knockouts entirely. Instead he used knockouts and another covering, thereby saving a little metal, to serve this temporary purpose pending the insertion of the cable conductors. Yet in his patent Knell paid tribute in this respect not to Box B (the housing and clamp shoe) but to the knockouts. For instance in his specification in stating his primary objective he mentions providing the housing with knockouts "to cover certain openings when a cable is not attached to the [outlet] box" and his only reference in the claims is to alined knockouts "whereby the knockout acts as a closure for the opening in the [outlet] box."

Counsel also states that "A housing fixed to the outside wall of said receptacle [outlet box] and having knockouts provided in the front wall thereof is new." Already we have shown that Gauthier teaches to locate Box B on the outside of Box A. We fail to appreciate that locating knockouts in the outer wall of Box B when so related to Box A, produces any patentable novelty whatever. Knockouts are only temporarily closed holes, pending removal for insertion of the cable. Common sense teaches everybody that knockouts are placed in holes in the outer wall while holes in an inner wall may be left open. In the patented device the wall of Box A is the

inner wall of Box B. Knell left opening in this inner wall and placed knockouts in the outer wall of Box B. In the Milcoff construction the wall of Box A is also the outer wall of Box B. Consequently, it might be said that Milcoff placed his knockouts in the outer wall of Box B. In fact Milcoff placed his knockouts in the wall of Box A which is also the outer wall of Box B. In any event Knell and Milcoff located their knockouts in the outer wall, which was the common sense thing to do. In doing what he did Knell necessarily positioned his knockouts in the wall of Box B instead of Box A, for the wall of Box B happened to be the outer wall. Certainly in doing this Knell was not exercising the capacity of an inventor.

Moreover, on the point discussed in the preceding paragraph, counsel for plaintiff emphasizes the position of the knockouts in a wall of Box B whereas in his claims the patentee stresses the "alinement" of the knockouts in the outer wall "with said openings" in the inner wall. In this connection counsel states that in Calderwood "there are no knock-outs in an exterior wall aligning with bushed openings." For one thing Knell makes no reference whatever to "bushed openings" in his claims and for another thing in his specification Calderwood directs his openings be formed in Box B "in alinement with the knockout openings" in Box A. Perhaps Calderwood does not show knockouts covering the openings in the wall of Box A but Milcoff does. Certainly this failure to provide knockouts, in an art where the expedient of using a knockout to close temporarily an opening in a box is old, is not very important nor does it throw discredit on the Calderwood prior art patent.

In view of the prior art we are compelled to disagree with counsel that the patented box discloses patentable novelty. Knell's claim to invention lies in his fixing to the outside of an outlet box a cable clamping mechanism having knockouts in its outer wall. We are convinced that this contribution added little to what Milcoff, Calderwood and Gauthier had already taught the art. Perhaps Knell's box constituted a more excellent box than the boxes against which it competed on the market, but it did the same work in the same way and by substantially the same means. In light of the prior art Knell's achievement is that of the artisan rather than that of the inventor.

Nor is this record clear on the superiority claimed for the Knell box over the competing boxes on the market. There is evidence that the superiority of the Knell box arises from two advantages, namely, (1) the primary advantage of space saving, and (2) the advantage of eliminating assembly or installation. Yet these advantages appear to be possessed or shared by the competing boxes. For instance it is the outside location of Box B which affords the additional space inside Box A and it is a separate Box A and Box B which require subsequent assembly or installation. Therefore advantage (1) is also possessed by the Gauthier box and those boxes disclosing external clamping mechanisms, and advantage (2) is also possessed by the Milcoff and Calderwood boxes or those boxes disclosing internal clamping mechanisms. In any event there is no evidence that the Knell box has displaced the other boxes on the market, nor is there evidence that Knell has supplied a long felt want or succeeded in accomplishing a novel result where others had failed.

Therefore we conclude that the Knell claims in issue are invalid for want of patentable novelty in view of the prior art. In reaching our conclusion we have not overlooked the presumption of validity that arises from the grant of a patent. This has been considered in the light of the history of the Knell patent in the Patent Office. (See footnotes 2 and 3, and opinion applicable thereto.)

The decree is reversed, and the case remanded, with directions to dismiss the bill for want of equity.